******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

## ORAL CARE DENTAL GROUP II, LLC *v.*
## SHANTEEMA PALLET ET AL.
## (AC 43877)

Bright, C. J., Elgo and Suarez, Js.

*Syllabus*

The defendant Commission on Human Rights and Opportunities appealed
from the judgment of the trial court vacating the damages award granted
by its human rights referee to the defendant employee, P, for garden-
variety emotional distress in a sexual harassment complaint against the
plaintiff employer. During a public hearing before the referee, P testified
that the harassing and discriminatory conduct of M, who was her direct
supervisor while she was employed by the plaintiff, made her feel uncom-
fortable, stressed, and nervous and caused her to become depressed.
On direct examination, she was not asked about, and did not testify
regarding, any medical treatment that she received relating to her depres-
sion. On cross-examination, however, the plaintiff's counsel questioned
P regarding the professional treatment that she sought as a result of
the emotional distress M had caused and asked why she had not pro-
duced any medical records relating to such treatment. The plaintiff's
counsel continued this line of questioning even after the referee ruled
that P was not required to produce any medical records because she
was claiming only garden-variety emotional distress. With the exception
of her testimony in response to the questions of the plaintiff's counsel,
P did not offer any evidence regarding her medical treatment. The referee
found in favor of P and awarded her back pay and damages for garden-
variety emotional distress. The plaintiff appealed to the trial court, which
vacated the referee's damages award, and the commission appealed to
this court. *Held* that the trial court erred when it vacated the referee's
damages award because it incorrectly concluded that the plaintiff was
prejudiced by P's failure to disclose her medical records: the referee
did not abuse her discretion when she awarded P damages for garden-
variety emotional distress because our Supreme Court in *Connecticut
Judicial Branch* v. *Gilbert* (343 Conn. 90) made clear that, where a
claimant limits her claim to one for garden-variety emotional distress
damages, her medical records have no relevance, and P's allegations
in her complaint and her testimony on direct examination, redirect
examination, and in response to the referee's questions during the hear-
ing were consistent with a claim for garden-variety emotional distress
and the referee's final decision clearly indicated that her award was
limited to damages for garden-variety emotional distress; moreover, a
new hearing in damages was not required because, unlike in *Gilbert*,
any prejudice that may have resulted from P's testimony regarding her
psychiatric treatment and medication was caused solely by the plaintiff's
counsel, who insisted on questioning P about her treatment even though
the subject was not raised in her direct testimony and he was informed
multiple times that such evidence was not relevant; furthermore, con-
trary to the plaintiff's claim, our Supreme Court in *Gilbert* did not state
that a hearing on medical records was a prerequisite to allowing a
complainant to present evidence of garden-variety emotional distress;
accordingly, the plaintiff did not have a right to P's medical records and
could not have been prejudiced by P's failure to produce them.

Argued January 6—officially released June 21, 2022

*Procedural History*

Appeal from the decision of the defendant Commis-
sion on Human Rights and Opportunities awarding the
named defendant back pay and certain damages,
brought to the Superior Court in the judicial district of
New Britain, and tried to the court, *Cordani, J.*; judg-
ment sustaining in part the appeal and vacating the
damages award, from which the defendant Commission

on Human Rights and Opportunities appealed to this court. *Reversed in part*; *judgment directed*.

*Michael E. Roberts*, human rights attorney, with whom, on the brief, was *Charles Krich*, principal attorney, for the appellant (defendant Commission on Human Rights and Opportunities).

*David L. Gussak*, with whom, on the brief, was *Gary Greene*, for the appellee (plaintiff).

*Opinion*

BRIGHT, C. J. The defendant Commission on Human Rights and Opportunities (commission) appeals from the judgment of the trial court vacating the human rights referee's damages award for garden-variety emotional distress to the defendant Shanteema Pallet,[1] in her sexual harassment complaint against the plaintiff, Oral Care Dental Group II, LLC. On appeal, the commission claims that the court erred when it vacated the damages award after concluding that the plaintiff was prejudiced by Pallet's failure to produce certain medical records.[2] We agree with the commission and, accordingly, reverse in part the judgment of the trial court and remand the case to the trial court with direction to deny the plaintiff's administrative appeal.

The following facts, as found by the referee, and procedural history are relevant to our analysis of the commission's claim. Pallet worked as a marketer for the plaintiff from April 16 to December 15, 2012. During that time, Christopher Mertens was Pallet's direct supervisor. Shortly after Pallet began working for the plaintiff, Mertens started to sexually harass her, both at work and after hours. He regularly commented on Pallet's appearance, made sexually explicit comments to her, ordered her to dress a certain way, invited her to private lunches and dinners, and repeatedly called and texted her, often to ask her out on dates. At one point, after Mertens learned that Pallet was dating someone else, he punished her by cutting her hours and taking away her weekly gas cards. This led Pallet to tell Mertens, falsely, that she no longer had a boyfriend so that she could get her hours and gas cards back. After learning that Pallet was still dating her boyfriend, Mertens fired her in December, 2012.

Thereafter, "[o]n June 13, 2013, [Pallet] filed a complaint with the [commission] alleging employment based sexual harassment and discrimination in violation of General Statutes §§ 46a-60[3] and 46a-58 (a)[4] with a deprivation of rights secured by Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2 (Title VII),[5] as its factual predicate." (Footnotes added.) In her complaint, Pallet specifically alleged that Mertens had sexually harassed her by commenting on her appearance and her body, regularly asking her out on dates, and calling and texting her during nonwork hours. Pallet further alleged that Mertens had discriminated against her after she rebuffed his repeated advances, first by reducing her hours and taking away her gas cards, then by firing her, and that "the [plaintiff's] actions have caused me to suffer monetary damages and emotional distress." The plaintiff summarily denied the allegations of sexual harassment and discrimination in Pallet's complaint.

The commission scheduled a public hearing, which was held before a referee on March 28, 29 and 30, 2017,

and on June 30, 2017. At the hearing, Pallet first testified as to Mertens' harassing and discriminatory conduct.[6] As to the effects Mertens' conduct had on her, Pallet testified on direct examination that Mertens' conduct made her uncomfortable and stressed her out. Specifically, she testified: "The way he wanted me to dress is not usually how I would dress. The shorter outfits when it was cold [were] uncomfortable, extremely uncomfortable. When he just gawked at me when I wore them was demeaning, like I felt less than, like, I felt . . . like a piece of meat, like, I felt dirty." She also testified that her communications with Mertens made her nervous and made her feel like her job was not secure unless she did what he wanted her to do. Pallet further testified that when Mertens fired her after learning that she was still dating her boyfriend: "[I]t just made me question . . . my ability to work around men and be comfortable doing it. It made me feel disgusted with myself and depressed." When asked to describe how the firing affected her life, Pallet testified that she "got really depressed" and felt "worthless . . . ." She testified that her depression caused her to lose interest in things, including engaging in activities with her son, and affected her ability to raise him. She further testified that what happened to her while working for the plaintiff caused her to look for work in just "the medical field with elderly people that . . . maybe don't have any sexual wants or needs."

During her direct examination, Pallet was not asked about and did not testify about any medical treatment that she received to treat her depression. On cross-examination, however, the plaintiff's counsel asked Pallet whether she had ever sought professional help for the emotional distress Mertens had caused, and Pallet admitted that she had seen a psychiatrist. The plaintiff's counsel then asked Pallet why she had not produced medical records related to that treatment despite the plaintiff requesting such documents.[7] Pallet's counsel objected, and the referee ruled that, because Pallet was claiming garden-variety emotional distress only, she was not required to produce any medical records. Despite this ruling, the plaintiff's counsel continued to cross-examine Pallet about her psychiatric treatment, and Pallet testified in response to a question by the plaintiff's counsel that the psychiatrist had prescribed her Zoloft. The plaintiff's counsel then commented, apparently directed at Pallet's counsel, "[s]omething else you didn't produce my friend," which led the referee to again state that Pallet was not required to disclose her medical records. On redirect examination, Pallet was not asked any further questions and did not provide any further testimony regarding any medical treatment she received for her depression. Furthermore, although the referee asked Pallet a few questions about payments she received from the plaintiff during her employment, she did not ask questions about the

emotional distress the plaintiff claimed or any issues of treatment brought out by the plaintiff's counsel during cross-examination. Pallet did not offer any other evidence regarding any treatment she received for her depression.

In a memorandum of decision dated May 16, 2018, the referee found in favor of Pallet, concluding that she had demonstrated "by a preponderance of the evidence [that she] suffered illegal sexual harassment . . . ." The referee awarded Pallet $40,398 in back pay and $25,000 in damages for garden-variety emotional distress. The referee's award made no reference to any medical treatment Pallet received for her depression.

Thereafter, the plaintiff appealed to the trial court. On appeal, the plaintiff challenged the referee's damages award for garden-variety emotional distress, claiming that (1) Connecticut does not recognize a claim for garden-variety emotional distress and Pallet did not allege such distress, (2) emotional distress and the associated damages were not proven, and (3) the plaintiff was prejudiced by Pallet's failure to produce her medical records.[8] In their briefs to the trial court, Pallet and the commission argued that the referee's award of garden-variety emotional distress damages was proper because (1) a claim for garden-variety emotional distress damages has long been recognized and (2) proving such damages does not require medical records or expert testimony.

The court disagreed with the plaintiff's first and second claims but agreed that the plaintiff had been substantially prejudiced by Pallet's failure to produce her medical records. More specifically, the court held that the plaintiff was prejudiced because the lack of those records prevented it from fully understanding the treatment Pallet received and inhibited the plaintiff's ability to "effectively cross-examine [Pallet] and offer counter evidence." The court also held that "[l]imiting [Pallet's] claim to garden-variety emotional distress damages did not undo the prejudice" because, "[a]lthough emotional distress damages may be proven without the need for expert medical evidence, unjustifiably withholding discoverable evidence relevant to the claim and the related damages is a separate issue, and may still impact the ability to defend that claim." On the basis of that prejudice, the court vacated the referee's damages award for garden-variety emotional distress. The commission then appealed to this court.

We begin by setting forth the applicable standard of review and principles of law that guide our analysis. "It is well established that [j]udicial review of [an administrative agency's] action is governed by the Uniform Administrative Procedure Act [(UAPA) General Statutes § 4-166 et seq.] . . . and the scope of that review is very restricted. . . . With regard to questions of fact, it is neither the function of the trial court nor of this

court to retry the case or to substitute its judgment for that of the administrative agency. . . . [F]or conclusions of law, [t]he court's ultimate duty is only to decide whether, in light of the evidence, the [agency] has acted unreasonably, arbitrarily, illegally, or in abuse of its discretion. . . . [Thus] [c]onclusions of law reached by the administrative agency must stand if the court determines that they resulted from a correct application of the law to the facts found and could reasonably and logically follow from such facts." (Citation omitted; internal quotation marks omitted.) *Commission on Human Rights & Opportunities* v. *Cantillon*, 207 Conn. App. 668, 672, 263 A.3d 887, cert. granted, 340 Conn. 909, 264 A.3d 94 (2021).[9]

Claims for garden-variety emotional distress "are cognizable under Connecticut law." *Connecticut Judicial Branch* v. *Gilbert*, 343 Conn. 90, 127 n.25, 272 A.3d 603 (2022). Such claims "refer to claims for compensation for nothing more than the distress that any healthy, well-adjusted person would likely feel as a result of being so victimized . . . ." (Internal quotation marks omitted.) *Equal Employment Opportunity Commission* v. *Nichols Gas & Oil, Inc.*, 256 F.R.D. 114, 121 (W.D.N.Y. 2009); see also *Ruhlmann* v. *Ulster County Dept. of Social Services*, 194 F.R.D. 445, 449 n.6 (N.D.N.Y. 2000) ("[g]arden-variety emotional distress is that which [is] simple or usual"). A plaintiff's recovery for garden-variety emotional distress "is not preconditioned on whether [the plaintiff] underwent treatment, psychiatric or otherwise." (Internal quotation marks omitted.) *Olsen* v. *County of Nassau*, 615 F. Supp. 2d 35, 46 (E.D.N.Y. 2009). Instead, "the evidence of mental suffering is generally limited to the testimony of the plaintiff, who describes his or her injury in vague or conclusory terms, without relating either the severity or consequences of the injury. . . . Such claims typically [lack] extraordinary circumstances and are not supported by any medical corroboration." (Citations omitted; internal quotation marks omitted.) Id.; see also *Patino* v. *Birken Mfg. Co.*, 304 Conn. 679, 706–707, 41 A.3d 1013 (2012) (plaintiff's testimony about mental suffering was sufficient on its own to support claim for garden-variety emotional distress).

On appeal, the commission claims that the court erred when it found that the plaintiff was substantially prejudiced by Pallet's failure to disclose her medical records because Pallet was not required to disclose those records, given that she was asserting a claim only for garden-variety emotional distress. We agree.

Our Supreme Court's recently released decision in *Connecticut Judicial Branch* v. *Gilbert*, supra, 343 Conn. 90, is instructive. In *Gilbert*, the complainant, a judicial marshal who was employed by the Connecticut Judicial Branch, "brought a claim with the commission alleging that another judicial marshal, Gordon Marco,

subjected her to severe and pervasive sexual harassment and unwanted sexual contact, potentially rising to the level of sexual assault, at various times between 2006 and 2012, while she was stationed primarily at the Danielson courthouse. The complainant alleged that the branch discriminated against her on the basis of her gender by, among other things, subjecting her to a hostile work environment, failing to adequately investigate her allegations, and failing to take adequate remedial steps to protect her. The complainant also claimed that the branch had retaliated by altering the conditions of her employment in response to her complaint . . . [by relocating her to courthouses that were] significantly farther from her residence." Id., 97–98.

After the public hearing before the commission, the referee found that the complainant's allegations were substantiated. Id., 98. The referee awarded the complainant back pay with prejudgment and postjudgment interest, $47,637 in attorney's fees, and $50,000 in damages for emotional distress. Id. The referee also granted the complainant injunctive relief in the form of an order that " '[t]he [branch] shall give the complainant the option of returning to the Danielson courthouse.' " Id.

Thereafter, the branch appealed to the trial court claiming, inter alia, that "the referee's award of emotional distress damages . . . was improper because the complainant refused to provide the branch with her psychological and medical records, allegedly in violation of the referee's discovery orders . . . ." Id., 99. The court agreed with the branch's discovery claim and, accordingly, vacated the referee's damages award for emotional distress. Id.

On appeal, our Supreme Court reversed the trial court's judgment with respect to, inter alia, its decision to vacate the damages award.[10] Id., 97. The court first provided some additional facts and procedural history relevant to this issue, which we summarize at length. During the proceedings before the commission, the branch issued the following discovery request to the complainant and the commission: " 'Please produce all medical records, counseling records, office notes, or other documents, if any, identifying any and all medical professionals who[m] the complainant consulted with or was treated by for emotional damages and/or physical damages that the complainant contends are related to [her] claims of discrimination.' " Id., 128. No records were ever produced in response to this request. Id. The complainant's initial witness lists, however, included a therapist and a psychologist who had provided mental health treatment to the complainant and whom she intended to call in support of her claim for emotional distress damages. Id. The branch objected to this proposed testimony because the complainant had failed to provide any records related to either witness. Id.

The referee in *Gilbert* ruled on the branch's objection

off the record and, according to the branch's characterization of that ruling, ordered that " '*if the complainant intended on pursuing anything other than garden-variety emotional distress* [*damages*], *she needed to provide copies of her psychological or mental health records.*' " (Emphasis in original.) Id., 129. Despite this order, the complainant still did not produce her complete medical records and, instead, ultimately produced a single record, which she alleged was her psychologist's original treatment notes. Id., 129–30. Accordingly, prior to the hearing, the referee ruled that the complainant could "put on evidence in support of her claim for garden-variety emotional distress but could not introduce medical records or other treatment related evidence of emotional distress damages [unless the complainant first produced her entire medical records]." Id., 131.

"At the hearing, the branch repeatedly objected to the admission of the complainant's evidence [as to garden-variety emotional distress] on two grounds. First . . . the branch argued that the complainant should be barred from introducing evidence even of garden-variety emotional distress. It contended that, without access to the complainant's medical records, it could not adequately cross-examine her regarding those claimed damages. The referee overruled those objections, stating that, in her view, the branch had an adequate opportunity for cross-examination without the records. Accordingly, the complainant was permitted to testify that she felt 'dirty,' victimized, embarrassed, ashamed, and fearful as a result of Marco's conduct and the branch's inadequate response. She [also] testified that, following the incidents, she had ceased to be a happy person; she suffered anxiety and nervousness, and would wake in the night crying. . . .

"Second, the branch contended that some of the testimony by the complainant and her lay witnesses crossed the threshold from garden-variety to treatment related emotional distress damages because the testimony occasionally alluded to or directly referenced the complainant's use of mental health counseling and pharmaceuticals to treat her emotional distress. The referee's response to this second category of objections was not a model of clarity or consistency. When the branch objected to the complainant's testimony that her physician had prescribed daily Lexapro for depression and anxiety, the referee allowed her to testify as to the medication but not the amount. When the branch objected to testimony that the complainant saw [a therapist], the referee allowed the complainant . . . to testify that she went to [a therapist] but not about the 'particulars' as to what occurred at the therapist's office. When the branch objected to testimony that the complainant was taking Tylenol PM and prescription sleep aids, the referee responded: 'We really can't get into too much medical information, because we're not doing

this based on her treatment. . . . [L]et's rephrase; just the over-the-counter [medications] that you know of . . . which does not have anything to do with records.' Finally, when the branch objected to testimony regarding the complainant's use of Xanax, the referee ruled: 'I think we're not getting into physician visits. I outlined in the beginning what garden-variety emotional distress is and how it's analyzed. I really don't think [that] taking a medic[ation] necessitates a review of medical records, but I don't want to get into more treatment or anything that happened with a doctor. . . . I really don't understand [the branch's] objection because . . . I'm not letting in any evidence that pertains to [the complainant's] treatment. I know [that her husband] mentioned a prescription. We can strike that prescription . . . from the record . . . .' " Id., 131–33.

In her memorandum of decision, the referee in *Gilbert* largely avoided any mention of the complainant's use of medication or counseling services. Id., 133. Her factual findings, however, did include "three references to the complainant's use of 'a prescription drug' or 'medication' to treat insomnia, anxiety, and chest pains arising from the alleged abuse." Id., 133–34. "Ultimately, the referee found that the complainant had suffered emotional distress as a result of the branch's discriminatory treatment . . . [and] awarded the complainant $50,000 in emotional distress damages." Id., 134.

On appeal to the trial court, the court concluded that the referee's damages award was an abuse of discretion and, accordingly, vacated the award, stating: " '[The complainant] withheld clearly discoverable, nonprivileged information without justification and despite the referee's order otherwise. . . . [T]he court cannot allow such unilateral, unjustified and fundamentally unfair action to go without consequence, particularly when it prejudices the other side. . . . The referee should have precluded all evidence concerning emotional and physical distress unless the proper discovery was provided. The referee's decision to allow garden-variety emotional distress evidence was made pursuant to improper procedure [and] was a clear error of law . . . .' " Id.[11]

The Supreme Court in *Gilbert* disagreed, concluding that "the trial court's judgment rests on a flawed analysis." Id., 134. According to the court, the complainant's testimony on garden-variety emotional distress was proper despite her failure to disclose the majority of her medical records because when complainants are seeking damages only for garden-variety emotional distress, they are not required to disclose their medical records. Id., 136–38 (complainant was permissibly "given a choice by the referee that allowed her to refuse production of [her] medical records without violating the [referee's] order [which limited the complainant to garden-variety emotional distress damages]").[12] Thus,

a complainant claiming only garden-variety emotional distress who fails to disclose his or her medical records properly is allowed to testify about "the sorts of everyday emotional and physical reactions to trauma that a jury reasonably could be expected to assess without the assistance of expert testimony . . . [as long as that testimony] does not involve a claim . . . that the emotional distress required professional medical/psychological diagnosis, treatment, or medication." Id., 127 n.25, 136–38. Testimony regarding a complainant's use of medications, counseling, or other medical treatment, however, "crosses the line into treatment related emotional distress and, thus, places [the complainant's] medical history at issue." Id., 138. In such cases, a complainant is required to disclose his or her medical records in order to obtain a damages award for that treatment related emotional distress. See id.

Accordingly, in *Gilbert*, the complainant's testimony that she felt " 'dirty,' victimized, embarrassed, ashamed, and fearful," suffered "anxiety and nervousness," and "ceased to be a happy person," all because of the harassment; id., 132; was properly admitted and could form the basis for the referee's garden-variety emotional distress damages award, even though the complainant produced almost none of her medical records, because such testimony was limited to garden-variety emotional distress. See id., 136–38; see also *Equal Employment Opportunity Commission* v. *Nichols Gas & Oil, Inc.*, supra, 256 F.R.D. 121 (garden-variety emotional distress is distress that " 'any healthy, well-adjusted person would likely feel as a result of being . . . victimized' "). The complainant's testimony about "her use of various over-the-counter and prescription medications to treat her insomnia and anxiety," however, crossed the line from garden-variety emotional distress into treatment related emotional distress. See *Connecticut Judicial Branch* v. *Gilbert*, supra, 343 Conn. 138–39. Consequently, the court held that, given the lack of medical records, allowing the complainant to testify about medications she had taken was an abuse of discretion because such testimony was not limited to garden-variety emotional distress. Id. The court further held that, although it was a close call, the erroneous admission of this testimony was not harmless because the referee had made several factual findings regarding the complainant's need for medication and the court was unable to conclude "that the improperly admitted evidence did not factor into her damages calculation." Id., 139–40. Therefore, the court remanded the matter for a new hearing in damages where the complainant would be allowed to present evidence only of garden-variety emotional distress and the referee would be limited to awarding damages for such emotional distress. Id., 140.

On April 27, 2022, following the release of our Supreme Court's opinion in *Gilbert*, we ordered the parties in the present case to submit supplemental

briefs addressing the impact, if any, of *Gilbert* on the commission's claim on appeal. The parties thereafter filed supplemental briefs in accordance with this court's order. In the supplemental brief filed by the commission, the commission argues that *Gilbert* supports its claim that the trial court erred in vacating Pallet's damages award because the result in *Gilbert* makes clear that, when a complainant seeks only garden-variety emotional distress damages—as Pallet did here—the complainant is not required to disclose his or her medical records. The commission also argues that a new damages hearing is not required in the present case because here, unlike in *Gilbert*, (1) it was only opposing counsel who solicited testimony about Pallet's medical history and (2) the referee did not reference that medical history in either her findings or her decision. Conversely, the supplemental brief filed by the plaintiff claims that the present case is distinguishable from *Gilbert* and that *Gilbert* "does not impact the decision rendered by the court below which is the subject of [the present] appeal." More specifically, the plaintiff contends that the court's decision to vacate Pallet's damages award was proper, even in light of *Gilbert*, because the court "found that discoverable documents were inappropriately withheld . . . [which] clearly prejudiced the [plaintiff]" and the referee in the underlying proceedings never held a hearing on Pallet's medical records. We agree with the commission.

On the basis of our Supreme Court's decision in *Gilbert*, we conclude that the court in the present case erred when it held that the plaintiff was prejudiced by Pallet's failure to produce her medical records because Pallet's allegations and her direct testimony at the public hearing were limited to garden-variety emotional distress, and the referee's decision and damages award were also so limited. We further hold that, unlike in *Gilbert*, a new damages hearing is not required because the plaintiff is in no position to complain about Pallet's testimony regarding medical treatment when its counsel, after being instructed that such evidence was not relevant, insisted on asking questions that resulted in that testimony, and there is nothing in the record that establishes that the referee relied on such evidence when awarding Pallet damages for garden-variety emotional distress.

Specifically, in the present case, unlike in *Gilbert*, Pallet never gave any indication throughout the entire proceedings before the commission that she was seeking anything other than garden-variety emotional distress damages. In her complaint, Pallet stated that she suffered emotional distress as a result of Mertens' harassment. The complaint did not assert an independent cause of action for emotional distress or any claims for a specific mental disorder or condition. Further, Pallet did not allege that Mertens' conduct had a significant impact on her physical health. Accordingly, the

allegations in her complaint were consistent with a claim for garden-variety emotional distress. See *Connecticut Judicial Branch* v. *Gilbert*, supra, 343 Conn. 132, 136–39 (testimony that sexual harassment caused anxiety and sadness was consistent with claim for garden-variety emotional distress); see also *Safeco Ins. Co. of America* v. *Vecsey*, 259 F.R.D. 23, 30 (D. Conn. 2009) (complainant's allegation of mental distress, "which [was] unaccompanied by any independent cause of action for mental distress . . . or claim for a specific mental disorder or condition," was claim for garden-variety emotional distress); *Olsen* v. *County of Nassau*, supra, 615 F. Supp. 2d 47 (treatment related emotional distress claims generally involve "outrageous or shocking discriminatory conduct or a significant impact on the [complainant's] physical health" (internal quotation marks omitted)).

Pallet's testimony during the hearing, specifically that Mertens' harassment caused her to feel nervous, dirty, "like a piece of meat," worthless and disgusted with herself, and caused her to be depressed and to lose interest in things, also was consistent with a claim for garden-variety emotional distress. See *Connecticut Judicial Branch* v. *Gilbert*, supra, 343 Conn. 132, 136–39; see also *Equal Employment Opportunity Commission* v. *Nichols Gas & Oil, Inc.*, supra, 256 F.R.D. 121 (garden-variety emotional distress refers to distress that " 'any healthy, well-adjusted person would likely feel as result of being . . . victimized' "). Unlike the complainant in *Gilbert*, who erroneously was allowed to testify, over the branch's objection, that she had taken medication to manage her anxiety and depression; *Connecticut Judicial Branch* v. *Gilbert*, supra, 138–39; Pallet did not testify on direct examination at all about any medical or psychiatric treatment. The topic was never raised by her, her counsel, or the referee. Instead, Pallet merely testified about how Mertens' harassment made her feel. Such testimony, in the absence of any mention of medical intervention, is not enough to cross the line into testimony about treatment related emotional distress. See id., 132, 136–39 (complainant's testimony that "she had ceased to be a happy person" constituted garden-variety emotional distress). Instead, such testimony is consistent with a claim for garden-variety emotional distress. See id.; see also *In re Sims*, 534 F.3d 117, 133–34 (2d Cir. 2008) (complainant who states that he or she suffers from depression makes claim only for garden-variety emotional distress). Pallet did not offer any other evidence regarding her medical treatment.

The plaintiff is correct that, at one point during the proceedings, Pallet testified that she had seen a psychiatrist and had been prescribed Zoloft. This testimony, however, occurred during cross-examination and was in response to questions that the *plaintiff's counsel* asked, despite being repeatedly cautioned by the ref-

eree that the proceeding was limited to garden-variety emotional distress. The fact that Pallet's testimony about medical treatment occurred during cross-examination distinguishes it from the testimony that our Supreme Court found improper in *Gilbert*. In *Gilbert*, it was the complainant and her witnesses who introduced inadmissible evidence about her use of medication through their testimony on direct examination, over the branch's objections. *Connecticut Judicial Branch* v. *Gilbert*, supra, 343 Conn. 138–39. In the present case, however, any prejudice that might have resulted from Pallet's testimony about psychiatric treatment and medication was caused solely by the plaintiff because its counsel inquired into Pallet's medical treatment and elicited testimony about that treatment even though the subject was never raised in Pallet's direct testimony and the referee repeatedly told the plaintiff's counsel that such evidence and records were not relevant. We simply are unpersuaded by the plaintiff's claim of harm that was self-inflicted.

Furthermore, on redirect examination, Pallet was not asked any questions about the treatment the plaintiff's counsel brought out on cross-examination. Moreover, although the referee asked Pallet questions on another topic, she did not ask her questions about any medical treatment she received.

Finally, the referee in the present case took great pains to ensure that the hearing and her eventual decision and damages award were limited to garden-variety emotional distress. During the hearing, the referee repeatedly characterized Pallet's complaint as alleging only garden-variety emotional distress, a characterization that neither Pallet nor her counsel ever disputed. Moreover, and again unlike in *Gilbert*, the referee in the present case did not make any factual findings about the complainant receiving psychiatric treatment or taking medication to manage her emotional distress. In fact, a review of the referee's final decision makes clear that the referee's damages award was limited to damages for garden-variety emotional distress and that the award was exclusively based on Pallet's testimony about the depression and other distress she had experienced because of Mertens' harassment.

Accordingly, because it is clear from the record that Pallet was making a claim only for garden-variety emotional distress, she was not required to disclose her medical records and the plaintiff, thus, was not entitled to receive those records. See id., 136–38 (complainant is limited to garden-variety emotional distress damages when he or she declines to provide his or her full medical records); see also *Olsen* v. *County of Nassau*, supra, 615 F. Supp. 2d 46 ("[i]n garden-variety emotional distress claims, the evidence of mental suffering is generally limited to the testimony of the plaintiff" (internal quotation marks omitted)). Therefore, because the

plaintiff did not have a right to Pallet's medical records, the plaintiff could not have been prejudiced by Pallet's failure to produce those records.[13]

We are equally unpersuaded by the plaintiff's claim, made in its supplemental brief, that Pallet should not have been allowed to present evidence on garden-variety emotional distress at all because the referee never held a hearing to determine which medical records Pallet was or was not required to produce. According to the plaintiff, such a hearing was held in *Gilbert* and it was only because of that hearing that the complainant was allowed to present evidence on garden-variety emotional distress. Thus, the plaintiff contends that, because no such hearing was held in the present case, Pallet was barred from testifying about garden-variety emotional distress. We disagree. Nowhere in *Gilbert* did our Supreme Court state that a hearing on medical records is a prerequisite to a complainant being allowed to present evidence of garden-variety emotional distress. See *Connecticut Judicial Branch* v. *Gilbert*, supra, 343 Conn. 136–40. To the contrary, the court's holding in *Gilbert* is clear that when a claimant limits her claim to one for garden-variety emotional distress damages, her medical records have no relevance. See id. Hence, there is no need for such a hearing.

In sum, the referee did not abuse her discretion when she awarded Pallet damages for garden-variety emotional distress because, as explained in *Gilbert*, Pallet was permitted to testify about her depression without first disclosing her medical records, given that such testimony went to garden-variety, and not treatment related, emotional distress. See id., 136–38. In addition, the plaintiff was not prejudiced by Pallet's failure to disclose her medical records because Pallet confined her claim and evidence to garden-variety emotional distress and the referee confined the hearing, her decision, and her damages award to garden-variety emotional distress, which the referee had every right to do. See id. (referees can properly limit proceeding to claim for garden-variety emotional damages). Furthermore, any prejudice that the plaintiff may have experienced was caused solely by its counsel's actions and cannot properly be attributed to either Pallet or the referee. Last, a new hearing in damages is not required in the present case, even though one was required in *Gilbert*, because the record here makes clear that the referee did not rely on any testimony about treatment related emotional distress in reaching her decision. Thus, the court erred when it vacated the referee's damages award because it incorrectly concluded that the plaintiff was prejudiced by Pallet's failure to disclose her medical records.[14]

The judgment is reversed with respect to the decision vacating the damages award, and the case is remanded to the trial court with direction to deny the plaintiff's

administrative appeal.

In this opinion the other judges concurred.

[1] Following her marriage, Pallet took the surname Graham but she did not amend her complaint to reflect that change. We thus refer to her as Pallet throughout this opinion.

[2] The plaintiff and Pallet both originally filed cross appeals in this action but those cross appeals were later withdrawn.

[3] General Statutes § 46a-60 (b) provides in relevant part: "It shall be a discriminatory practice in violation of this section . . . (1) [f]or an employer . . . except in the case of a bona fide occupational qualification or need . . . to discharge from employment any individual or to discriminate against any individual in compensation or in terms, conditions or privileges of employment because of the individual's . . . sex . . . ."

Although the legislature has amended § 46a-60 since the events underlying this appeal; see Public Acts 2017, No. 17-118, § 1; Public Acts 2017, No. 17-127, § 4; Public Acts 2019, No. 19-16, § 4; Public Acts 2019, No. 19-93, § 8; Public Acts 2021, No. 21-69, § 1; those amendments have no bearing on the outcome of this appeal. All references herein to § 46a-60 are to the current revision of the statute.

[4] General Statutes § 46a-58 (a) provides in relevant part: "It shall be a discriminatory practice in violation of this section for any person to subject, or cause to be subjected, any other person to the deprivation of any rights, privileges or immunities, secured or protected by the Constitution or laws of this state or of the United States, on account of . . . sex . . . ."

Although the legislature has amended § 46a-58 since the events underlying this appeal; see Public Acts, Spec. Sess., June, 2015, No. 15-5, § 73; Public Acts 2017, No. 17-111, § 1; Public Acts 2017, No. 17-127, § 2; those amendments have no bearing on the outcome of this appeal. All references herein to § 46a-58 are to the current revision of the statute.

[5] Title 42 of the United States Code, § 2000e-2 (a), provides in relevant part: "It shall be an unlawful employment practice for an employer- (1) . . . to discharge any individual, or otherwise to discriminate against any individual with respect to his [or her] compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex . . . ."

[6] Despite the issuance of two subpoenas, Mertens failed to appear at the hearing.

[7] During discovery, the plaintiff made a request for production of "copies of all medical reports or medical bills received by you for treatment, consultation, or diagnosis of injuries or conditions, which you claim are, or may be related to any claim for injuries you claim you were caused by the actions of the [plaintiff]." Pallet responded: "None."

[8] In its appeal to the trial court, the plaintiff also challenged several other aspects of the referee's final decision, claiming that the referee (1) erred in awarding back pay despite the lack of evidence supporting such an award, (2) improperly made an adverse inference based on Mertens' failure to appear at the hearing, and (3) made numerous erroneous evidentiary rulings. The court rejected these additional claims, and the plaintiff does not challenge on appeal the court's decisions as to those claims.

[9] The Supreme Court granted certification limited to the following issue: "Did the Appellate Court correctly conclude that the trial court had properly determined that the human rights referee adjudicating the underlying housing discrimination claim applied the proper legal principles in awarding the claimant 'garden-variety' damages for emotional distress in the amount of $15,000 against the named defendant, a neighbor who repeatedly subjected the claimant to racially motivated verbal and physical harassment?" *Commission on Human Rights & Opportunities* v. *Cantillon*, 340 Conn. 909, 909–10, 264 A.3d 94 (2021).

[10] In the branch's appeal to the trial court, the branch made the following additional claims of error: "(1) . . . prior to 2019, the commission was not authorized to award attorney's fees and emotional distress damages to victims of employment discrimination under either § 46a-58 (a) or § 46a-60, (2) the award of prejudgment and postjudgment interest against the state under [General Statutes] § 46a-86 (b) is barred by the state's sovereign immunity . . . and (4) the referee exceeded her legal authority in ordering the branch to reinstate the complainant to her position at the Danielson courthouse." (Footnote omitted.) *Connecticut Judicial Branch* v. *Gilbert*, supra, 343 Conn. 99.

The trial court disagreed with the branch's first claim, concluding that, although "emotional damages and attorney's fees are unavailable for viola-

tions of § 46a-60 that occurred before 2019," such remedies are available to victims of employment discrimination when those victims also allege violations of federal employment discrimination laws, as was the case in *Gilbert*. Id., 99–100. With respect to the second claim, the court again disagreed with the branch, finding that "the state ha[d] waived its sovereign immunity as to prejudgment and postjudgment interest for civil rights violations." Id., 100. As to the branch's fourth claim, the court agreed with the branch and, accordingly, also vacated the referee's injunction. Id., 99.

Our Supreme Court then affirmed the trial court's holding on the first claim, reversed the trial court's holding on the second claim, and remanded for further proceedings on the fourth claim. Id., 97. Because none of these holdings is central to the issues implicated in the present case, we do not discuss them in detail in this opinion.

[11] We note that the same trial court, *Cordani, J.*, decided the administrative appeals in both *Gilbert* and the present case. We further note that the quoted language of the trial court's order in *Gilbert* is strikingly similar to the court's order in the present case: "Complainant withheld clearly discoverable, non-privileged information without justification. The court cannot allow such unilateral, unjustified and fundamentally unfair action to go without consequence, particularly when it prejudices the other side." These similarities make our Supreme Court's analysis and decision in *Gilbert* all the more relevant in the present case.

[12] We note that this holding in *Gilbert* is consistent with the holding of the United States Court of Appeals for the Second Circuit on the same issue. See *In re Sims*, 534 F.3d 117, 134, 141 (2d Cir. 2008) (when complainant makes claim only for garden-variety emotional distress, complainant is not required to disclose, and opposing party does not have legal right to, complainant's medical or psychiatric records); see also *Curry* v. *Allan S. Goodman, Inc.*, 286 Conn. 390, 415, 944 A.2d 925 (2008) (Connecticut's appellate courts "review federal precedent concerning employment discrimination for guidance in enforcing our own antidiscrimination statutes").

[13] We also note that, at oral argument before this court, the plaintiff conceded that it would have no right to Pallet's medical records if all that Pallet was claiming was garden-variety emotional distress.

[14] In light of our conclusion that the court erred in vacating the referee's damages award because the plaintiff was not prejudiced by Pallet's failure to disclose her medical records, we do not address the commission's alternative argument that the plaintiff did not adequately brief its claim of prejudice before the trial court.

―――――――――――――――――――